IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTINE L. H.,[1] | Case No. 6:25-cv-00996-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Christine H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1971, plaintiff alleges disability beginning January 1, 2020,[2] due to "anxiety, rare breast infection (right), lower back pain, [and] hyperthyroidism." Tr. 311, 365. Plaintiff's applications were denied initially and upon reconsideration. On October 11, 2023, and June 6, 2024, hearings were held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-84. On July 12, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 17-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since January 1, 2020, the amended alleged onset date."[3] Tr. 21. At step two, the ALJ determined the following impairments were medically determinable and severe: "bilateral carpal tunnel syndrome (CTS) status post right carpal tunnel release; degenerative disc disease of the lumbar spine; obesity; and major depressive disorder with anxiety." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22.

---

[2] Plaintiff initially alleged disability as of January 1, 2019, but amended her onset date at the hearing to coincide with her work history. Tr. 18, 41, 66, 332.

[3] In February 2024, plaintiff began working full-time as a server at Denny's. Tr. 43-44. At the June hearing, plaintiff indicated that her hours were in the process of being reduced to part-time (i.e., three six hours shifts per week) due largely to her physical symptoms. Tr. 44-47, 51. The VE characterized this work as "semi-skilled," with a medium exertional level. Tr. 56. Accordingly, at step one, the ALJ observed that plaintiff "worked after the amended alleged disability onset date [but this] part time work did not rise to the level of substantial gainful activity." Tr. 21.

Page 2 – OPINION AND ORDER

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [She can] occasionally stoop, kneel, crouch, crawl and climb; occasionally push and pull with the bilateral upper extremities; and frequently handle and finger with the bilateral upper extremities. Additionally, [plaintiff] is limited to understanding, remembering and carrying out simple instructions; and can occasionally interact with others.

Tr. 24.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ concluded, based on the VE's testimony, that there were significant numbers of jobs in the national economy plaintiff could perform despite her impairments, such as checker, plastic hospital parts assembler, inspector and hand packager. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly assessing the medical opinions of the state agency consulting psychologists, Winifred C. Ju, Ph.D., and Tawnya Brode, Psy.D. By extension, plaintiff maintains that the ALJ failed to include all of her limitations in the RFC, thereby rendering the ALJ's step four and five findings invalid.[4]

---

[4] Plaintiff also asserts that examining doctor Ernest Bagner, Psy.D., "opined [she] would experience moderate limitation in following detailed instructions and mild limitation in following simple instructions [which] supports the need for a limitation to reasoning level one jobs." Pl.'s Opening Br. 10-12 (doc. 10). As discussed herein, however, "it is the narrative written by the psychiatrist or psychologist" and "not the broad terms, such as 'moderately limited,' in areas of functioning" that is dispositive in this context. *Snider v. Berryhill*, 2018 WL 344973, *4 (D. Or. Jan. 9, 2018). Further, Dr. Bagner's evaluation predated both the state agency consulting source opinions and her employment with Denny's. Tr. 719-22.

Page 3 – OPINION AND ORDER

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "that appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

On October 27, 2022, Dr. Ju provided the initial review of the record and rated plaintiff's limitations in regard to the "'B' CRITERIA OF THE LISTINGS" as follows:

> **Understand, remember, or apply information:** Moderate
> **Interact with others:** Moderate
> **Concentrate, persist, or maintain pace:** Moderate
> **Adapt or manage oneself:** Mild

Tr. 94, 113. The "PRT – Additional Explanation" section stated, in turn: "Recommending [that plaintiff is] capable of SRTs [i.e., simple, routine, tasks] with LPC [i.e., limited public contact] given depression and anxiety." *Id.*

In the corresponding "Mental Residual Functional Capacity Assessment," Dr. Ju wrote plaintiff was moderately restricted in her ability to "remember locations and work-like procedures" and "understand and remember detailed instructions," but otherwise "not significantly limited," such that she would be capable of "understand[ing], remember[ing], and carry[ing] out simple instructions." Tr. 97, 116.

Page 4 – OPINION AND ORDER

Regarding "sustained concentration and persistence," Dr. Ju opined plaintiff was moderately limited in her ability "to carry out detailed instructions," "maintain attention and concentration for extended periods," "work in coordination with or in proximity to others without being distracted by them," "sustain an ordinary routine without special supervision," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 98, 117-18. As a result, Dr. Ju explained plaintiff "[c]an sustain attention and concentration for short simple work tasks." *Id.*

As for "social interaction limitations," Dr. Ju specified plaintiff was moderately impaired in her ability to "interact appropriately with the general public," but was otherwise "[n]ot significantly limited," such that she "[w]ould do best in [a] work setting limited to occasional public contact." Tr. 99, 118. In concluding, Dr. Ju reiterated plaintiff is "capable of SRTs w/ LPC." Tr. 100, 119.

On March 21, 2023, Dr. Brode adopted Dr. Ju's findings, describing them as "substantially correct." Tr. 133, 135-38, 151, 153-56.

In formulating the RFC, the ALJ stated:

the prior administrative medical finding of the State agency and opinion of the consultative examiner, Dr. Bagner, [are] persuasive. These consultants opined [plaintiff] had moderate mental limitations. The undersigned finds this to be supported by explanation and Dr. Bagner's evaluation, and consistent with the record that showed mental health treatment with use of psychotropic medications, and positive mental status examination findings of abnormal mood, psychomotor retardation, and difficulty with concentration. Therefore, based on [plaintiff's] record and testimony, the undersigned assesses moderate mental limitations and the associated mental restrictions herein.

Based on the foregoing, the undersigned finds [that plaintiff] has the above residual functional capacity assessment, which is supported by [plaintiff's medical] record,

> as detailed above . . . along with participation in activities of daily living, including part time work.

Tr. 27. Accordingly, the ALJ limited plaintiff, in relevant part, to "understanding, remembering and carrying out simple instructions" and "occasionally interact[ing] with others." Tr. 24.

As a preliminary matter, plaintiff seemingly ignores myriad aspects of Drs. Ju and Brode's narrative reports. *Compare* Pl.'s Opening Br. 6-8 (doc. 10), *with* Tr. 98, 117-18, 135-38, 153-56. Yet, as noted above, it is the concrete functional limitations outlined in the doctor's narrative description that form the basis of the RFC. *Snider*, 2018 WL 344973 at *4; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures [moderate limitations] where the assessment is consistent with restrictions identified in the medical testimony").

Furthermore, an ALJ does not err by neglecting to use the precise terminology set forth in a doctor's narrative assessment. *See Devin B. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 3072488, *7 (D. Or. Apr. 25, 2023) ("it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's finding") (citation and internal quotations omitted); *see also Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ may incorporate a medical opinion by assessing RFC limitations consistent with, but not identical to, those assessed by the doctor). The dispositive inquiry thus surrounds whether the ALJ's RFC represents a reasonable interpretation of the record, supported by substantial evidence.

Here, the ALJ's RFC is not inconsistent with the findings of Drs. Ju, Brode, and Bagner. Although the state agency consulting source opinions are not a model of clarity (insofar as they included a "short" modifier as it relates to "simple work tasks"), Drs. Ju and Brode repeatedly stated that plaintiff was ultimately capable of performing simple, routine, tasks, with limited public

Page 6 – OPINION AND ORDER

contact, despite her mental impairments. Tr. 91, 94, 100, 110, 113, 119, 131, 133, 138, 149, 151, 156; *cf. Christopher F. v. Bisignano*, 2025 WL 3001588, *5 (S.D. Cal. Sept. 30, 2025) (*Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), "is inapplicable" where the ALJ's RFC and dispositive hypothetical posed to the VE "were in lockstep") (citations and internal quotations omitted). And Dr. Bagner concluded that plaintiff was only "mildly limited" in her ability "to follow simple, oral and written instructions," "comply with job rules," and "respond to changes in routine work setting." Tr. 722. Stated differently, the ALJ reasonably interpreted the opinions of Drs. Ju, Brode, and Bagner to indicate that plaintiff could sustain attention and concentration in regard to simple tasks, even if they were not short, especially given the overall record. *See Crellin v. Bisignano*, 2026 WL 63645, *2-4 (E.D. Cal. Jan. 8, 2026) (affirming the ALJ's decision under analogous circumstances).

As plaintiff acknowledges, the representative occupations identified by the VE each involve a General Educational Development ("GED") reasoning level of two. Tr. 57-58; Pl.'s Opening Br. 11-12 (doc. 10). According to the Dictionary of Occupational Titles, level two GED reasoning requires a person to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to deal] with problems involving few concrete variables in or from standardized situations." DOT, App. C § III.

The Ninth Circuit has repeatedly held that a restriction to "simple tasks" or "simple, repetitive tasks" is congruent with GED level two reasoning. *See e.g.*, *Abrew v. Astrue*, 303 Fed.Appx. 567, 569-70 (9th Cir. 2008); *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. 2008); *Davis v. Saul*, 846 Fed.Appx. 464, 466 (9th Cir. 2021). The Ninth Circuit has also found "no appreciable difference between the ability to make simple decisions based on short, simple instructions and the ability to use commonsense understanding to carry out detailed but uninvolved

instructions, which is what Reasoning Level 2 requires." *Ranstrom v. Colvin*, 622 Fed.Appx. 687, 688 (9th Cir. 2015) (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)). In sum, the ALJ did not commit reversible error in evaluating the medical evidence or formulating the dispositive hypothetical question posed to the VE.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 27th day of February, 2026.


/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge